**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL C. FUOROLI and TIFFANY
S. FUOROLI,

                 Plaintiffs,

v.

WESTGATE PLANET HOLLYWOOD
LAS VEGAS, LLC, et al.,

                 Defendants.

2:10-CV-2191 JCM (GWF)

**ORDER**

Presently before the court is defendants' motion for reconsideration of a prior order of this court.  (Doc. # 90).  Plaintiffs have filed a consolidated response in opposition and countermotion to strike.  (Doc. # 99).  Each side has filed a response and reply to the other's motions.  (*See* doc. ## 104, 105, 108).

**I.      Background**

The instant dispute arises out of a contract between plaintiffs Michael and Tiffany Fuoroli and defendant Westgate Planet Hollywood Las Vegas, LLC, which developed a timeshare offering at the Planet Hollywood Towers.

Plaintiffs allege that Westgate made the following misrepresentations in the timeshare sales negotiations: the property would be a pet friendly environment (doc. #1 at ¶ 21), when in fact it is not (*id.* at ¶ 22); daily maid service would be included (*id.* at ¶ 19), when the purchase included only weekly cleaning (*id.* at ¶ 20); the timeshare would book a fixed unit during New Year's Eve each

**James C. Mahan**
**U.S. District Judge**

year (*id.* at ¶ 23), when in reality the plaintiffs were purchasing neither a fixed unit nor the right to reserve any unit on New Year's Eve (*id.* at ¶ 25).  Plaintiffs also contend that Westgate made false and misleading statements with regard to all of the following: the cancellation period for timeshares under Nevada law (*id.* at ¶ 35); the financing package used to purchase the timeshare (*id.* at ¶¶ 36–44); and, the completion date of the hotel (*id.* at ¶ 47).

From these facts, plaintiffs have alleged seven claims for relief.  Ultimately, plaintiffs contend that "the contract drafted and presented by Defendants was materially different than the terms upon which Plaintiffs and Defendants had agreed during the sales presentation, [and] there was no meeting of the minds as to the terms of the purchase contract signed by Plaintiff[s] and, therefore, no contract was formed. . . ." (*Id.* at ¶ 26).[1]

On February 4, 2011, Westgate filed a motion to strike the demand for a jury trial based on a jury waiver provision in the agreement signed by the parties.  (Doc #12).  On May 15, 2011, this court denied Westgate's motion "absent further briefing and discovery on this issue from the parties." (Doc. #28).  On March 4, 2013, Westgate filed a renewed motion to strike the demand for a jury trial.  (Doc. #70).

After attempting to examine the waiver provision in the contract provided to the court, which was a shrunken, scanned, and unreadable copy, the court weighed the factors articulated in *Phoenix Leasing Inc. v. Sure Broad., Inc.*, 843 F.Supp. 1379, 1384 (D. Nev. 1994), and denied the renewed motion to strike.  (Doc. # 87).  Defendants have physically filed a readable copy of the contract and now move the court to reconsider that order.  Plaintiffs oppose reconsideration and move the court to strike the "allegedly legible copy of the purchase agreement, affidavit, and exhibit."  (*See* doc. # 99 at 22).

. . .

. . .

---

[1]  This is despite the fact that plaintiffs' first cause of action is for breach of contract, in which they allege "...Plaintiffs and Westgate Planet Hollywood Las Vegas, LLC entered into a written contract." (*Id.* at ¶ 87).  In addition, plaintiffs' own motion for summary judgment asserts that "[t]he existence of a contract between the parties is undisputed. Throughout their various pleadings Defendants never deny the existence of a contract between themselves and Plaintiffs, and, in fact, outright admit its existence." (Doc. # 44 at 4).

James C. Mahan
U.S. District Judge

## II.     Discussion

Although the motion for reconsideration was filed prior to the motion to strike, the court first considers the motion to strike as it seeks to exclude an exhibit which forms the basis of the motion for reconsideration.

### A.     Motion to strike

Defendants have submitted the *first legible copy* of the disputed contract, *from either party*, which plaintiffs now move to strike. "Motions to strike are generally disfavored by courts." *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, 932 F.2d 972 (9th Cir. 1991)(citing *Stabilisierundfonds Fur Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir. 1981)). "Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Archie*, 2012 WL 6645204, at *2 (D. Nev. 2012).

Plaintiffs assert the exhibit should be stricken pursuant to Local Rule 10-3(a)(regarding legibility of exhibits), and/or because the illegible copy was approved by the parties in the pre-trial order for submission to the jury; and/or because they have not been served with a copy.[2]  These arguments are flatly rejected.

Plaintiffs cannot contend with a straight face that they would be prejudiced in any manner if the court accepts the late filing of the document at the very heart of a lawsuit *initiated by them* and from which their causes of action flow. The plaintiffs are both parties to this very contract. In fact, they have previously submitted (illegible) copies of this very document in conjunction with their prior motions for partial summary judgment. (*See* doc. # 44, ex. 1). To now claim that they would somehow be prejudiced by the *only* legible copy of the document at the core of this dispute is both troubling and completely nonsensical.

Plaintiffs instead *insist* on using the illegible version. (*See, e.g.*, plaintiffs' opposition, doc. # 99 at 18) ("This court has already stated that this document is illegible. It was illegible when

---

[2] Defendants reply that a copy has been mailed to plaintiffs and, in any event, plaintiffs have their own full-sized copy from the original execution of the agreement.

1  Plaintiffs submitted it to the Court for consideration, it was illegible when Defendants submitted it
2  to the Court in the Pretrial Order...and it is illegible now.  It is this illegible document that we are
3  going to show to the jury, and it is the version the Court must continue to refer to in making its
4  ruling.").  Although entertained by its novelty, the court rejects this argument.

5       The illegible version is difficult to read simply because of the minimization and repeated
6  scanning of the document before being electronically filed.  The court declines to permit this breach
7  of contract action to proceed to trial using an illegible version of the disputed document when a
8  legible one is readily available.  The version that the court refers to will be the very same version that
9  was presented to plaintiffs *at the time of execution*–a readable one.  The motion to strike is
10  emphatically denied.

11       *B.*    *Motion for reconsideration*

12       Defendants ask the court to reconsider its prior order (doc. # 87) denying their motion to
13  strike plaintiffs' demand for a jury trial.  A motion for reconsideration "should not be granted, absent
14  highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.
15  2000).  Reconsideration "is appropriate if the district court (1) is presented with newly discovered
16  evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an
17  intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th
18  Cir. 1993).

19       Rule 59(e) "permits a district court to reconsider and amend a previous order," however "the
20  rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation
21  of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations
22  omitted).  "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first
23  time when they could reasonably have been raised in the earlier litigation." *Id.* (citing *Kona Enters.,*
24  *Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000)).

25       Defendants seek to strike plaintiffs' jury demand, relying on a provision waiving the right
26  to a jury trial contained within the disputed contract.  This is essentially defendants' third motion to
27  strike plaintiffs' demand for jury trial, which the court has denied on two prior occasions.  (*See* doc.

28

**James C. Mahan**
**U.S. District Judge**

1  ## 28, 87).

2      In those orders, the court denied the motions for the following reasons: (1) plaintiffs contest

3  the validity of the entire purchase agreement and request rescission of the entire agreement (*see* doc.

4  # 28 at 10); (2) the copy of the contract provided to the court was illegible (*see* doc. # 87 at 4); (3)

5  there is no indication on the copy of the contract that the parties had explicitly reviewed the page

6  containing the waiver provision together (*see id.*); (4) there was no indication that the page

7  containing the waiver provision is part of the contract signed by the parties (*Id.*); (5) that page does

8  not contain the names of the plaintiffs anywhere (*Id.*); and (6) that page does not provide any

9  affirmative acknowledgment of any terms of the contract, including the waiver, such as by plaintiffs'

10  signature(s), initials, or other means.  (*Id.*).

11      The fact that the contract was a one page document with terms located on the front and back

12  was not made clear to the court at that time, explaining several of the concerns expressed in that

13  order.  With that in mind, the court concluded that, in addition to being illegible, the waiver was not

14  conspicuous.  (*See id.*).

15      Defendants have now physically filed a true-to-size copy (8 ½" x 14") of the contract.  Again,

16  this is the *first legible copy of the contract provided to the court by either side*.  As such, it is the first

17  real opportunity the court has had to review the terms of the contract, and the first chance to fairly

18  consider whether the waiver was knowing, voluntary, and intelligent.  The court concludes that it

19  was.

20      "The right to a jury trial in federal court is governed by federal law." *Phoenix Leasing Inc.*

21  *v. Sure Broad., Inc.*, 843 F.Supp. 1379, 1384 (D. Nev. 1994) (citing *Simler v. Conner*, 372 U.S. 221,

22  221-22 (1963)); *Allyn v. W. United Life Assurance Co.*, 347 F.Supp.2d 1246, 1251 (M.D. Fla. 2004)

23  ("It is well settled that the right to a jury trial in federal courts is to be determined by federal law in

24  diversity actions.").  "Although the right to jury trial in civil cases tried before federal courts is a

25  constitutionally protected right, it may be waived by a contract knowingly and voluntarily executed."

26  *Id.*

27      The federal standard for determining the validity of a contractual waiver of the right to a jury

28

James C. Mahan
U.S. District Judge

- 5 -

1    trial requires the court to determine if "the waiver was knowing, voluntary, and intelligent." *Phoenix*,

2    843 F.Supp. at 1384 (noting a circuit split regarding which party bears the burden of seeking to

3    enforce the waiver and/or striking the jury demand). "Some factors used to determine whether a

4    waiver was knowing and intelligent include:

5                    (1) whether there was a gross disparity in bargaining power
                     between the parties; (2) the business or professional experience
6                    of the party opposing the waiver; (3) whether the opposing party
                     had an opportunity to negotiate contract terms; and, (4) whether
7                    the clause containing the waiver was inconspicuous."

8    *Id.* The court stands by its evaluation of the first three factors articulated in its prior order, whereby

9    it concluded that they are all neutral. (*See* doc. # 87).

10        The court now reconsiders its analysis of the fourth factor, and finds that the waiver was

11   conspicuous. The contract consists of a mere two pages. The front page contains the parties' names

12   and addresses, provides a breakdown of the pricing, available dates, assigned units, and other general

13   information. Directly below the pricing breakdown reads: "THIS AGREEMENT is subject to the

14   terms and conditions set forth on the reverse side hereof which by reference is [sic] made a part

15   hereof." This express reference is clearly legible. The date and signatures of the parties are located

16   at the bottom of the first page.[3]

17        The reverse (page two) contains a list of 25 additional provisions containing more specific

18   information regarding the cancellation policies, maintenance fees, financing terms, approved uses,

19   transfers and assignments, and the like. Provision number 23 is titled "Choice of Law; Jurisdiction;

20   Venue; and Waiver of Jury Trial." As with the headings of the other provisions, this heading is

21   printed in bold typeface and is underlined. The existence of the provision waiving the right to trial

22   by jury would be readily noticeable to any person skimming the (very short) headings. Put

23   differently, it would not even be necessary to read the text of the subsection to learn of the waiver.

24        This is not a case where the waiver language is "buried in the text" of a voluminous

25   document. In truth, it is hard to imagine a situation where text could fairly be characterized as

26   _____

27        [3] While plaintiffs contend that *Phoenix* is not satisfied because the waiver provision is not located on the same
     page as the signature line, *Phoenix* does not mandate such; the presence of the clause near the signature line was only
28   one of several factors the court examined. *See Phoenix*, 843 F.Supp. at 1384.

James C. Mahan
U.S. District Judge                                      - 6 -

"buried" in the entirety of two pages, only one of which is comprised of a listing of specific contractual clauses. Indeed, the backside of the contract does not contain a horde of provisions–there are only 25. The clauses are not lengthy or verbose; the text of those 25 provisions is succinct enough to fit legibly onto a single page. Although the entire waiver provision is not printed in bold typeface, the words "Waiver of Jury" clearly are. In the context of this particular two page document, the court finds that the clause containing the waiver was conspicuous, and it is therefore enforceable.

**III.    Conclusion**

This is a fairly straightforward breach of contract case which has, inexplicably, been ongoing for over three years. This same dispute over the right to a jury trial has been revisited multiple times over the years, primarily due to both parties' failure to submit a readable version of the disputed contract. Due to the drawn-out nature of this case, the parties are advised that the court will not consider any future motions regarding the issues of waiver or the use of a legible version of the contract, absent an extremely clear showing of good cause.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for reconsideration (doc. # 90) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion to strike (doc. # 99) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiffs' jury demand is STRICKEN.

DATED January 14, 2014.

_____
**UNITED STATES DISTRICT JUDGE**